UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENA L.,[1]

    **Plaintiff,**

v.

Case No. 3:20-cv-00376
Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Dena L. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 16, *Defendant's Memorandum in Opposition*, ECF No. 19, *Plaintiff's Reply*, ECF No. 20, and the *Certified Administrative Record*, ECF No. 13. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

I.      PROCEDURAL HISTORY

Plaintiff protectively filed her applications for benefits on January 6, 2016, alleging that she is disabled[3] based on a number of physical and mental impairments. R. 218-24, 225-30.[4] The applications were denied initially and upon reconsideration and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 162-63. Administrative Law Judge ("ALJ") Deborah F. Sanders held a hearing on January 18, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35-75. In a decision dated July 5, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from her alleged disability onset date through the date of that decision. R. 12-28. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 7, 2018. R. 1-6.

On June 19, 2019, United States Magistrate Judge Sharon Ovington granted the parties' *Joint Stipulation to Remand to the Commissioner* and directed the Commissioner to reweigh the medical evidence and opinions and to reevaluate Plaintiff's RFC. *L[.] v. Comm'r of Soc. Sec.*, 3:18-cv-0365 (S.D. Ohio June 19, 2019), R. 1292-93. ALJ Stuart Adkins held a hearing on December 4, 2019, at which Plaintiff, who was again represented by counsel, testified, as did a vocational expert. R. 1230-59. On January 30, 2020, ALJ Adkins issued a decision again concluding that Plaintiff was not disabled. R. 1201-18. The Appeals Council declined review of that decision on July 12, 2020. R. 1191-97.

---

[3] Plaintiff originally alleged a disability onset date of July 14, 2012. However, Plaintiff, through counsel, later amended that date to November 1, 2016. *See* R. 1240. *See also* R. 1387.
[4] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 22. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this

3

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 30 years old on her alleged disability onset date. R. 1216. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between November 1, 2016, her amended alleged disability onset date, and the date of the decision. R. 1204.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease ("DDD") of the lumbar spine; carpal tunnel syndrome; depression disorder; bipolar disorder; post-traumatic stress disorder; hypertension; migraines; neuropathy; gastroesophageal disorder; irritable bowel syndrome; osteoarthritis; anxiety disorder; obesity; Ehlers-Danlos Syndrome; and chronic obstructive pulmonary disease. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; can stand and/or walk for about 2 hours and sit for about 6 hours in an 8 hour workday; can never climb ladders ropes and scaffolds or crawl; can occasionally climb ramps and stairs, stoop, kneel, and crouch; can frequently balance; can frequently handle finger and feel bilaterally; can tolerate occasional exposure to extreme heat, extreme cold, dust, odors, fumes, and pulmonary irritants; should avoid unprotected heights, dangerous machinery and commercial driving; can perform simple routine tasks but not at a production rate pace; can have frequent interaction with supervisors, co-workers, and the general public.

R. 1206. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a nurse's aide and a home health aide. R. 1216.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as an inspector, document preparer, and sorter—existed in the national economy and could be performed by Plaintiff. R. 1217. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 14, 2012, her original alleged disability onset date, through the date of the decision. R. 1218.

Plaintiff disagrees with the ALJ's findings and conclusions, arguing that the ALJ erred in finding that Plaintiff's impairments, considered either alone or in combination, neither meet nor equal Listings 1.02 or 1.04 and in his RFC determination. *Plaintiff's Statement of Errors,* ECF No. 16; *Plaintiff's Reply Brief*, ECF No. 20.[5] She asks that the decision of the Commissioner be

---

[5] Plaintiff actually argues, in her second contention, that the Commissioner failed to carry the burden of proof at step 5 of the sequential evaluation. However, this argument really amounts to a challenge to the ALJ's RFC determination at step 4, and as to which it is the claimant who bears the burden of proof. *See Walters v. Comm'r of*

reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Id*. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 19.

## IV. RELEVANT EVIDENCE AND DISCUSSION

Plaintiff's contentions turn on her allegation that she has been prescribed and requires a walker to ambulate. In fact, at the second administrative hearing, Plaintiff amended her alleged disability onset date to November 1, 2016, to coincide with her treating physician's prescription for a walker. R. 1240. *See also* R. 1387. The Court will therefore limit its discussion to that issue.

On March 10, 2016, Damian Danopulos, M.D., performed a consultative examination of Plaintiff at the request of the state agency. R. 743-61. Dr. Danopulos expressly noted that Plaintiff did not use ambulatory aids during the examination. R. 743. Plaintiff complained of, *inter alia*, low back and knee pain, which she rated as 7-9 on a 10-point scale. *Id.* On clinical examination, Dr. Danopulos found full but painful range of motion in the upper and lower extremities, R. 746, as well as "a normal gait without ambulatory aids." R. 747. Plaintiff could get on and off the examination table without difficulty, and her bilateral straight leg rising was normal, as were squatting and arising from a squat, and toe and heel gait. *Id*. Motion of the lumbar spine was restricted and painful. *Id*. X-rays of the lumbar spine were normal. *Id*. Dr. Danopulos opined that Plaintiff's

> main somatic complaints, one by one and all together, practically do not interfere with any work related activities. . . considering that she was walking properly, did

---

*Soc. Sec.*, 127 F.3d 525, 529 n.3 (6th Cir. 1997) ("We do not need to reach Step Five nor any of the arguments Walters has advanced concerning Step Five since the ALJ's conclusion at Step Four is supported by substantial evidence, rendering any such discussion inconsequential.")

> all the examination properly without any problem, and had very nice and good grip strength, she can do any job that is not very heavy.

R. 749.

On April 4, 2016, Rannie Amin, M.D., reviewed the record at that time and opined that, despite Plaintiff's DDD, she had the RFC for a limited range of light work:

> . . . [D]uring [consultative examination], multi-joint complaints are voiced. Despite this, she had a relatively normal exam, including gait, strength and [range of motion], although some joints were painful and DL ROM was mildly limited. There was no clinical indication of radiculopathy. [Lumbosacral] x-ray normal. . . .

R. 86. In June 2016, Elizabeth Das, M.D., reviewed the record, including some treatment records from Plaintiff's treating physician, R. 109, on reconsideration for the state agency and opined that, despite her spine disorders, R. 114, Plaintiff had the RFC for a limited range of medium work. R. 115-16.

On September 23, 2016, A. Patrick Jonas, M.D., Plaintiff's treating primary care provider, requested that Plaintiff be provided "one level" housing because she "can not climb stairs" as a result of her disc disease and ruptured vertebrate [sic], and sciatic nerve. She has arthritis in her knee and has trouble bending and climbing stairs." R. 888-90. On October 11, 2016, Dr. Jonas prescribed a walker in connection with Plaintiff's osteoarthritis of the knees and lumbar disc disease. R. 886. Effective November 1, 2016, Dr. Jonas issued a "[l]ifetime" authorization of a walker because of Plaintiff's low back pain with lumbar disc disease and bilateral knee pain which "significantly impairs [her] ability to participate in one or more mobility-related activities of daily living (MRADL) in the home, such as Feeding, Toileting, Grooming and Bathing." R. 869-70.[6]

---

[6] Dr. Jonas also prescribed and authorized Plaintiff's lifetime use of a knee brace, R. 871, and a bath bench with back, R. 872, 886.

Amol Soin, M.D., of the Ohio Pain Clinic, treated Plaintiff from October 12, 2016 to January 18, 2017, including the administrative of spinal injections. R. 813-39. Dr. Soin's findings included positive straight leg raising, *e.g.*, R 837, but no difficulty in balance or gait, *id*. *See also* R. 828 (same, in November 2016), 821 (same, in December 2016), 714 (same, in January 2917).

Dr. Jonas wrote in March 2017 that Plaintiff is "totally disabled from all work" because of, *inter alia*, "Osteoarthritis of both knees and the associated pain, Cervical and Lumbar Disc Disease with neck pain, low back pain and Sciatica. . . ." R. 853. However, during a February 2019 office visit, Dr. Jonas noted that Plaintiff reported "walking her dogs during good [weather]." R. 1575. Plaintiff also reported a 90% pain relief with medication. R. 1579. *See also* 1590 (same, reported in March 2019), 1598 (same, reported in April 2019). In May 2019, Plaintiff reported "100%" or "Complete relief" of her pain with treatments or medications. R. 1605. *See also* R. 1624 (same, in August 2019), 1654 (same, in November 2019), 1611 ("90" "100" % pain relief reported in June 2019), 1617 (same, in July 2019).

In November 2019, Dr. Jonas again authorized Plaintiff's use of a walker based on her "mobility limitation that significantly impairs [her] ability to participate in one or more mobility-related activities of daily living (MRADL) in the home, such as Feeding, Toileting, Grooming and Bathing." R. 1650. However, in that same authorization form, Dr. Jonas answered "No" to the question, "Does the patient have limited use of one or both hands and/or a neurological disease?" R. 1651.

At the first hearing, held by ALJ Sanders in January 2018, Plaintiff testified that she has pain in her lower back and legs. R. 50. She experiences "sharp pains down the back of [her] legs and [her] feet" after standing for five minutes. *Id*. Her knees "collapse on [her], and they hurt real

9

bad and they swell." R. 56. She had undergone injections, physical therapy, and occupational therapy. R. 52, 53. The physical therapy had made the pain worse. R. 54. She rated her pain with medication as 5 or 6 on a 10-point scale. *Id.* A TENS unit, ice packs, and a heating pad also help. R. 55. She has used a walker "[a]t least a couple times a day" since it was prescribed in 2016. R. 56. Specifically, she used her walker to go outside, and she then sits on the walker. R. 63. She relies on her daughters to do most of the housework. *Id.* She needs help with her personal care. R. 65.

At the December 2019 hearing, conducted by ALJ Adkins, Plaintiff testified that she lives with her daughters in a two-story townhouse. R. 1237. She goes down and back up the stairs once a day and has fallen down the stairs. *Id.* She uses her walker "all the time," R. 1243, to assist with pain and balance, R. 1246. Her lower back, pelvis, hip, and knee pain had worsened despite a substantial loss of weight. R. 1244-45. Injections had had mixed results. R. 1245. Her pain medication helps, along with a heating pad and ice pack, although her medication makes her "nod out." R. 1246. She has seen Dr. Jonas once or twice per month since 2015. R. 1250.

The vocational expert testified that the use of a walker by a claimant would preclude all sedentary and light work. R. 1256.

### A.     Listings 1.02 and 1.04

Plaintiff first contends that the ALJ erred in concluding that Plaintiff's impairments neither meet nor equal Listings 1.02 and 1.04. In order to qualify for disability under a listed impairment, a claimant "must have a medically determinable impairment(s) that satisfies *all* of the criteria in the listing." 20 C.F.R. §§ 404.1525(d); 416.925(d) (emphasis added). The claimant "must point to specific evidence that demonstrates [that she] reasonably could meet or equal

every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). The United States Court of Appeals for the Sixth Circuit has held that an ALJ need only make sufficient findings somewhere in his decision to support his step three conclusion. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). Critically, the burden of proof at step three rests with the claimant. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012).

Listing 1.02 addresses major dysfunction of a joint; Listing 1.04 addresses disorders of the spine. The relevant provisions of both Listings[7] require that the impairment or combination of impairments results "in inability to ambulate effectively, as defined in [Listing] 1.00B2b." 20 C.F.R. § Pt. 404, Subpt. P, App'x. 1, Listings 1.02, 1.04C. Listing 1.00B2b defines "inability to ambulate effectively," as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . ." Listing 1.00B2b(1). That provision offers as an example of ineffective ambulation "the inability to walk without the use of a walker. . . ." *Id.* at 1.00B2b(2).

The ALJ concluded that Plaintiff's impairments neither met nor equaled Listings 1.02 and 1.04:

> The undersigned carefully considered Listing sections 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). However, the evidence does not show an inability to ambulate effectively for 12 months or more, as required by sections 1.02(A) or 1.04(C). Although the claimant has used a cane and walker, there is no evidence that the claimant's use of the cane has limited the functioning of both upper extremities as required by section 1.00(B)(2)(b)(1). In March of 2016, the

---

[7] Listing 1.04 addresses several different disorders of the spine. Listing 1.04A requires, *inter alia*, evidence of "nerve root compression" and Listing 1.04B requires, *inter alia*, "[s]pinal arachnoiditis," neither of which does Plaintiff allege. Plaintiff appears to contend that her impairments meet or equal Listing 1.04C, which requires evidence of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, *and resulting in inability to ambulate effectively, as defined in 1.00B2b.*" *Id*. (emphasis added).

11

> claimant exhibited a normal gait without ambulatory aids, normal toe heel gait, and normal straight leg rise (9F at 5).
>
> Further, there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss or positive straight-leg raising test (sitting and supine), as required by section 1.04(A). MRI and x-ray scans of the claimant's lumbar spine show normal limited spine with mild foraminal stenosis (2F at 175 and 12F at 17). There are some references to positive bilateral straight leg raises in the medical records, but there is no indication of any motor loss associated with muscle weakness, sensory or reflex loss (10F, 12F, 13F, 20F, and 23F).
>
> \*\*\*
>
> The requisite clinical signs and findings necessary to substantiate the existence of Listing-level physical impairment for any of the above-referenced sections of Appendix 1, Subpart P, Regulations No. 4 are not present.

R. 1204-05. Although this final statement is somewhat conclusory, the ALJ expressly considered, elsewhere in the decision, whether Plaintiff required the use of a walker:

> This case was remanded back due to the claimant's use of a walker and/or any other assistive device was not adequately addressed in the decision dated July 5, 2018 (14A). Within the record, the claimant is remarked to have been prescribed a walker with seat, cane, and shower chair/bath bench (1F at 39, 15F at 21-23, and 30F at 21, 39, 43, 52, 154, 155, and 157). The first prescription for an assistive device is noted to have been made in November of 2016 (15F at 21). On November 21, 2016, the claimant's treating physician reported that the claimant has significant mobility limitations that impair her ability to participate in one or more mobility activities and these issues are resolved with use of a walker and she was remarked to require frequent rest with walking (15F at 22-23). Furthermore, there is a letter within the record, undated, which states that the claimant requires a shower chair, a cane, and a walker, plus exercise equipment including a stationary bike, a yoga mat, and stretch bands for physical therapy (30F at 155). The most recent prescription for an assistive device is remarked to have been made on September 11, 2019 (30F at 154).
>
> Despite these assertions, the evidence of record simply does not depict that the claimant requires an assistive device for ambulation. The claimant's medical file does not indicate that the claimant consistently uses a cane, walker, or wheelchair, even in her physical therapy notes. Furthermore, on February 18, 2019, the claimant was remarked to have been walking her dog (30F at 94). Her ability to perform such task does not indicate that her ability to stand, walk, or balance, are significantly limited and that she has adequate balancing capabilities. Moreover,

12

>the claimant is remarked to receive significant relief from her pain with medications, which would infer that the claimant's pain complaints do not interfere with her ability to walk as alleged. The claimant was noted to receive 70% relief from exercise, medications, heat or ice packs. The pain inventory indicated that the claimant's average pain level was a three out of ten, her lowest pain level was a two out of 10, and her worst pain level was a five out often within the past 24 hours (Exhibits 15F at 17 and 24 at 9 and 14). She reported getting more relief, approximately 80%, and that her worst pain was a four out of 10 in the past 24 hours (24F at 2, 16, 32-33, and 36). The claimant was remarked to have received as much as 90% relief with treatment as well (24F at 10). Therefore, after consideration of the entire record it has been determined that the necessity of an assistive device is not supported by the substantial weight of the evidence.
>
>Additionally, the claimant exhibited a normal gait without ambulatory aids, normal toe heel gait, and normal straight leg rise during the independent evaluation conducted by Dr. Danopulos. Moreover, he noted the claimant's ability to walk properly without any problem. Hus musculoskeletal evaluation revealed a normal gait without ambulatory aids. Additionally, Dr. Danopulos noted that she claimant could get on and off the examination table without difficulty, toe and heel gait were normal, and that her ability squat and arise from a squatting position were normal. Dr. Danopulos found no evidence of nerve root compression or peripheral neuropathy (9F). Thereby in consideration of these findings, as well as those discussed above, it has been determined that the claimant is capable of occasionally climb ramps and stairs, stoop, kneel, and crouch and that she can frequently balance. The findings of Dr. Danopulos do[ ] not support the necessity of an assistive device.

R. 1210-11.

Plaintiff contends that the ALJ merely "cites a single treatment note" in support of his finding that she does not require a walker. *Plaintiff's Statement of Errors*, ECF No. 16, PageID# 1725. This is a mis-characterization of the totality of the ALJ's decision. As the excerpt quoted above shows, the ALJ exhaustively considered all the evidence of record in support of his finding in this regard. Plaintiff also argues that the ALJ erred in relying on the findings and opinions of Dr. Danopulos because his examination took place months prior to Plaintiff's amended alleged disability onset date. *Id*. However, even if the findings and opinions of Dr. Danopulos are disregarded, the other evidence upon which the ALJ relied provides substantial

support for his conclusion that Plaintiff neither meets nor medically equals Listings 1.02 or 1.04C.

Pointing to Dr. Jonas' prescriptions and authorizations, Plaintiff observes that the record also contains evidence that Plaintiff must use a walker. *Id.* However, because the ALJ's conclusion that Plaintiff neither met nor equaled Listings 1.02 or 1.04 enjoys substantial support in the record, the Court is without authority to disturb that finding. *See Blakley*, 581 F.3d at 406 ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.") (internal quotation omitted).

### B. RFC Determination

Plaintiff also argues that the ALJ's RFC determination was flawed because it did not include the need to use a walker and, had there been such a limitation in the RFC, the vocational expert's testimony would mandate a finding of disability. A claimant's RFC is the most that a claimant can do despite her limitations. 20 U.S.C. §§ 404.1545(a)(1); 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c); 416.927(e)(2), 416.946(c). In making that determination, the ALJ must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); SSR 96–5p, SSR 96–8p. The ALJ's RFC determination, like all findings of an ALJ, must be supported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779 (6th Cir. 2009). However, the ALJ's RFC determination need not be precisely based on a professional medical opinion. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination

cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) (rejecting the argument that "the ALJ's RFC lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence.")). *See also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") Thus, an ALJ does not improperly assume the role of a medical expert merely by assessing the medical and non-medical evidence when determining a claimant's RFC. *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009).

As noted above, the ALJ discussed in exhaustive fashion the evidence concerning Plaintiff's alleged need for an assistive device. In finding that Plaintiff had the RFC for a reduced range of sedentary work that did not require the use of such devices, the ALJ also considered the various medical opinions. Specifically, the ALJ accorded "little weight" to the opinions of Drs. Amiri and Das, the state agency reviewing physicians, because "these reviewers did not have access to the claimant's longitudinal medical history." R. 1208. The ALJ gave "no more than little weight" to the opinion of Dr. Danopulos, reasoning that "his assessment of the claimant's functional capacity was vague and as of this time, his evaluation is somewhat remote." R. 1213. The ALJ found "not persuasive," R. 1216, Dr. Jonas' March 2017 opinion, R. 853, that Plaintiff is "totally disabled from all work":

> The claimant's treating physician A. Patrick Jonas, M.D., opined in writing that the claimant is totally disabled from all work due to OA of the bilateral knees and

15

>associated pain, cervical and lumbar DDD, bilateral CTS, EDS, and depression (15F at 6 and 40 and 24F at 28). This opinion evidence is found to be unsupported by the substantial weight of the evidence. Dr. Jonas did not provide any specific function-by-function limitations that the claimant has, which would indicate that she is totally disabled. Such a generic statement is not consistent with the specific and precise definition of "disability" for Social Security purposes. Whether any documented reduction in capability renders an individual "disabled" (i.e., ultimately, whether the individual is unable to perform work existing in significant numbers in the national economy) is an issue to be resolved under Social Security rules and regulations. Dr. Jonas does not include any objective evidence in support of this blanket opinion, and the objective evidence in the record do not support such an opinion.

R. 1215-16. Plaintiff suggests that, having discounted the opinions of all the medical experts, the ALJ improperly relied on his own lay opinion in finding that Plaintiff had the RFC for a limited range of sedentary work. *Plaintiff's Statement of Errors*, ECF 16, PageID# 1726. However, as the Court noted above, an ALJ's RFC determination need not be based precisely on a professional medical opinion, *Mokbel-Aljahmi,* 732 F. App'x at 401, and an ALJ—whose duty it is to determine a claimant's RFC—does not improperly assume the role of a medical expert merely by assessing the medical and non-medical evidence when making that determination. *Poe,* 342 F. App'x at 157.

V.     **CONCLUSION**

In short, and for all these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 16, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  January 13, 2023                              *s/Norah McCann King*
                                                  NORAH McCANN KING
                                           UNITED STATES MAGISTRATE JUDGE